IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| PHILIP GARNETT and MARSHA GARNETT | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 5:09-CV-00144-TBR<br>) |
| NAU COUNTRY INSURANCE COMPANY<br>7333 Sunwood Drive,<br>Ramsey, Minnesota 55303 | ) JURY DEMAND<br>)<br>)<br>) |
| Defendant. | ) |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
## JUDGMENT ON PLEADINGS FOR RESLOVE OF COUNTS I AND II

COMES NOW the Plaintiffs, Philip and Marsha Garnett, by and through their undersigned counsel, and file this Reply in Support of their September 11, 2009, Motion for Judgment on the Pleadings.

### I. Introduction

This matter is before the Court, upon the Plaintiffs', Philip and Marash Garnetts, Verified Complaint, Counts I and II, seeking a declaration from this Court that Arbitration Award entered May 5, 2009, is void *ab inito*. The arbitration in this matter was submitted improperly under the terms of a crop insurance policy. Such policy was written by the Risk Management Agency, a part of the United States Department of Agriculture. This is the Plaintiff's final brief submitted to this Court to resolve whether the May 5, 2009, Arbitration Award entered should be declared void under the terms of the arbitration agreement and likewise vacated under Section 10 of the Federal Arbitration Act. At this juncture, the Respondent, NAU Country Insurance Company's ("NAU") only contention to prevent the application of the clear directive of the arbitration

agreement is that an interpretation of the disputed policy was not required in this case. That contention is in error based on both the terms of the policy and because the crop loss in this case is not fully addressed by prior interpretations.

## II. Argument

### A. THE ARBITRATION CLAUSE REQUIERES AN INTEPRETATION IN ANY DISPUTED CASE OF POLICY AND PROCEDURE

At the onset, the Garnetts assert that 7 C.F.R. 457.820 ¶ 20 (a)(1) (i.e. "Section 20" of the crop insurance agreement) requires a RMA interpretation of policy and procedure in any case where there is a disagreement. The phrase as used in that provision is "if the dispute in any way involves a policy or procedure interpretation,… either you or we must obtain an interpretation from [RMA] in accordance with 7 CFR part 400, subpart X." The plain reading of this language does not mean what NAU suggests. Rather it means that in *every* dispute over policy and procedure, an interpretation is required or any arbitration will be set aside under Section (a)(1)(ii). This directive mandates that if "any way" there is a policy dispute an interpretation is required. A review of Subpart X reveals there is no directive that creates an exception to the requirement of obtaining an interpretation in any case involving a dispute over policy and procedure. See 7 C.F.R. §§ 400.765-768. There is no dispute that neither party submitted a Subpart X request for a Final Agency Determination ("FAD") to address the admitted dispute over "policy and procedure."

### B. EVEN UNDER NAU'S THEORY, FADs 35 AND 60 DO NOT ADDRESS THE POLICY QUESTION IN DISPUTE

Even if NAU were correct in their contention that prior FAD's prevent the need for a subsequent interpretation, it is necessary that the prior RMA issued interpretations completely address the scope of the disagreement under the terms of the policy. Otherwise, a new

interpretation is required.  Here, and at arbitration, NAU has taken the position that Final Agency Determinations 35 and 60 are conclusive interpretations of the policy regarding the Garnetts' case.  That is incorrect.  The culmination of these FADs does not address the situation that was in issue.  There is no question that the loss in this case was a result of fire, but that the fire only turned into a loss through the excessive winds passing through the region during the curing process.  See Garnetts' "Claimant Response," Comp. Ex. N, page 2.  Even in light of FAD-35 and FAD-60[1], the question under the policy is when a *man-made fire*, which is clearly unavoidable as a part of a good farming practice, becomes a *natural cause* of loss because of other natural events such as excessive wind conditions.  This defined issue is not within the scope of the prior FADs presented to the arbitrator.  Accordingly, a new FAD must have been requested to resolve this issue of a "mixed" cause of loss involving both fire and wind.

NAU in their Response, has made a number of statements that amount to nothing more than a series of red herrings that do not address the legal issues in dispute.  First, NAU's suggestion that it is "disingenuous" to claim that a FAD interpretation is required in this matter, ignores the clear directive of the arbitration agreement.  There is no doubt that the arbitration provision places the obligation on either party to obtain a required interpretation of policy and procedure.  7 C.F.R. 457.820 ¶ 20 (a)(1).  NAU has admitted that the terms of the policy cannot be waived by either party.  Therefore, as they must, NAU has not alleged that the Garnett's have waived the directive of the arbitration clause by not raising that issue during the course of the arbitration proceedings.  NAU had an equal opportunity to submit a required interpretation for their own benefit, but they chose to skip this critical step themselves, despite having the benefit of counsel.  The fact remains that the arbitration agreement imposed precedent conditions on

---

[1] The Garnetts do not accept FADs 35 and 60, as they are arbitrary and capricious in considering the objectives of the Federal Corp Insurance Act in promoting a "sound system of crop insurance." 7 U.S.C. § 1502. If necessary they will exercise their right to judicial review of these interpretations as authorized by 7 C.F.R. 457.820 ¶ 20(b).

3

either party prior to submitting the arbitration for a decision. The failure of the Garnetts, NAU and the Arbitrator to follow those conditions is what should result in this Award being vacated, as the Arbitrator exceeded the scope of his authority.

In a similar manner, NAU's suggestion that the Garnetts' would not have filed this case but for losing in arbitration is an indicator of their intentions are likewise misplaced. The Garnett would agree that had they prevailed at Arbitration without first seeking an interpretation of the disputed policy terms, that award would be properly set aside in a litigation brought by NAU. However, it ignores all common sense to suggest that the Garnetts would have brought this litigation had they won in arbitration. Nor are the Garnetts motives in bring suit relevant to the legal issues before the Court. Contrary to NAU's unrealistic suggestion, this matter is before the Court because the terms of the arbitration agreement were not complied with, which renders the Award void.

**C. NAU HAS NOT PROVIDED THE COURT WITH THE CONTROLING AUTHORITY FOR THE STANDARD OF REVIEW OF THE ARBITRATION AWARD**

As a final note, NAU's exposition of law on the standard of review to be applied by this Court is incorrect. As the Plaintiffs have stated in their September 25, 2009, Response, unless the arbitration agreement clearly states otherwise, the scope of an arbitrator's authority is reviewed *de novo*, with a "thumb on the scale" in favor of arbitration. *Solvay Pharmaceuticals Inc., v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471 (6th Cir. 2006). NAU's reliance on the so-called "draws its essence" standard or review is clearly inaccurate as *Solvay* adopts a different standard for reviewing the *scope* of an arbitrator's authority.

Moreover, NAU has cited *Schoenduve Corp. v. Lucent Technologies,* 442 F.3d 727 (9th Cir. 2006), for the proposition that the "arbitrator's interpretation of the scope of his powers i[s] entitled to the same deference as the determination on the merits." NAU Response at p. 6. That

statement of law directly conflicts with *Solvay*, the controlling authority upon this Court. *Solvay* at 477-78 ("…questions of arbitrability are the province of courts, not arbitrators... Courts thus review questions of arbitrability de novo, but with a thumb on the scale in favor or arbitration."). Simply, *Schoenduve* and its progeny of cases out of the 9th Circuit are not even persuasive authority as the 6th Circuit has taken a different approach. *Schoenduve* should not even be considered by this Court.

### III. Conclusion

While the parties dispute the outcome of this case, there is no dispute that the arbitration agreement required an interpretation of policy and procedure. The failure to do so directs that the arbitration award be declared void. It is equally established that this case presented a unique situation of both wind and fire contributing to cause the Garnetts tobacco crop loss and that situation is not covered by any previous interpretations that were submitted to the arbitrator. Now, the fact that neither party sought a "required interpretation" must result in this Court vacating the May 5, 2009, Arbitration Award.

Respectfully submitted, this 2[th] day of October 2009.

/s/ James G. Adams III\_\_\_
James G. Adams III
THOMAS & ARVIN
1209 S. Virginia Street
P.O. Box 675
Hopkinsville, Kentucky 42241-0675
(270) 886-6363 (Telephone)
(270) 886-8544 (Facsimile)
jadams@thomasandarvin.com

**Certificate of Service**

The undersigned hereby certifies that a true and accurate copy of the foregoing Reply was this 2nd day of October, 2009, was electronically filed through the ECF System to the following:

Mr. Steven D. Pattee
PATTEE & ASSOCIATES, LLC
17595 Kenwood Trail Suite 150
Lakeville, MN 55044
Tel: (952) 898-5552
Fax: (952) 898-2775
Counsel for Defendant
Admitted Pro Hac Vice

Noel R. Halpin
SCHILLER OSBOURN BARNES & MOLONEY, PLLC
1600 One Riverfront Plaza
401 West Main Street
Louisville, KY 40202
(502) 583-4777
Co-counsel for Defendant

              /s/ James G. Adams III
            THOMAS & ARVIN