UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-00144-R

**PHILLIP GARNETT** and
**MARSHA GARNETT**                                                                                    **PLAINTIFFS**

v.

**NAU COUNTRY INSURANCE COMPANY**                                                      **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment on the Pleadings for Resolve of Counts I and II that the Arbitration Award Entered May 5, 2009, is Void Ab Initio (DN 15). Defendant has responded (DN 18), and Plaintiffs have replied (DN 21). Also before the Court is Defendant NAU Country Insurance Company's Motion to Confirm Arbitration Award (DN 14). Plaintiffs have responded (DN 19), and Defendant has replied (DN 20). These matters are now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion is GRANTED and Defendant's Motion is DENIED.

BACKGROUND

On September 17, 2008, one of Plaintiffs' tobacco barns containing a crop of dark fire-cured tobacco was destroyed in a fire. Plaintiffs submitted a claim to their insurer, Defendant, but this claim was denied. Plaintiffs then initiated an arbitration proceeding as required by the insurance policy. The arbitrator found Plaintiffs were not entitled to any insurance indemnity. After an unsuccessful administrative appeal, Plaintiffs initiated this action.

As Plaintiffs explained in their brief, dark tobacco is raised almost exclusively in the "black patch" region of Kentucky and Tennessee. In this region, the dark tobacco crop is grown over the summer months and then cut in late August and early September. After the tobacco is

cut, it is placed on wooden sticks and hung to undergo a curing process in barns. Dark "fire-cured" tobacco is cured using both air and a smoldering fire to dry the tobacco and infuse the flavor. Plaintiffs claim that on the day of the incident excessive winds from the remnants of Hurricane Ike caused the tobacco curing process to develop into an uncontrolled fire.

Plaintiffs' insurance policy with Defendant was purchased under the provisions of the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501-24. The FCIA was enacted to help protect American farmers, and it created the Federal Crop Insurance Corporation ("FCIC") to carry out its purposes. The U.S. Department of Agriculture's Risk Management Agency ("RMA"), in turn, operates and manages the FCIC. RMA, via the FCIC, provides crop insurance to American producers. Private-sector insurance companies such as Defendant sell and service the policies, and the RMA reinsures the companies. RMA also provides final agency determinations ("FADs") interpreting the FCIA and regulations made under FCIA. These determinations are final and binding on all participants in the crop insurance program. 7 C.F.R. § 400.765.

Plaintiffs' policy protected against loss caused by fire. 7 C.F.R. § 457.136. RMA, however, has limited this provision in two FADs. In FAD-35, RMA determined that "fire is an insurable cause of loss when circumstances causing the fire are unavoidable and when the insured can establish that the ignition source of the fire is due to a natural cause or natural disaster." Subsequently, in FAD-60, RMA re-emphasized that "the burden is on the insured to not only establish that a fire occurred, the insured must also establish that the fire was due to natural causes." In both determinations RMA relied on section 508(a)(1) of the FCIA which states that in order "[t]o qualify for coverage under a plan of insurance, the losses of the insured

commodity must be due to drought, flood, or other natural disaster (as determined by the Secretary)."

Here, the arbitrator found that Plaintiffs did not offer any evidence that "the ignition source of the fire was due to an unavoidable, naturally occurring event or natural disaster," and therefore he concluded that "the damage resulting from the fire was uninsurable." Before this decision, Plaintiffs did not directly challenge RMA's interpretation of the fire policy provision. Afterwards, however, Plaintiffs attempted to appeal FAD-60. In their letter to the Director of the U.S. Department of Agriculture's National Appeal Division, Plaintiffs argued that to the extent a fire is part of the dark fire-cured tobacco farming process it is a naturally occurring event unless a showing of negligence or bad farming practice is made. Plaintiffs also objected to the interpretation that the insured is required to establish that the cause of loss came from a natural source. The National Appeals Division determined that it did not have jurisdiction to accept Plaintiffs' request for a review of FAD-60.

Plaintiffs now argue that their dispute was improperly submitted to arbitration. The arbitration clause of Plaintiffs' policy provides that disputes are subject to arbitration, but "if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either [the insured or insurer] must obtain an interpretation from FCIC." The clause further provides that "[f]ailure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award."

Plaintiffs also argue that the determination made by the arbitrator be nullified because he failed to provide a written statement of factual findings. The arbitration clause states that the

3

arbitrator must provide a written statement "describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and a breakdown by claim for any award" as well as "any amounts awarded for interest." The clause further provides that "[f]ailure of the arbitrator to provide such written statement will result in the nullification of all determinations of the arbitrator."

Defendant requests that the Court affirm the arbitrator's award.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of

material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

By the plain terms of Plaintiffs' insurance policy, if the dispute between Plaintiffs and Defendant *in any way* involved a policy or procedure interpretation, the failure to obtain an interpretation from the FCIC on whether the specific policy provision or procedure was applicable to the situation, how it was applicable, or what it meant, *will result* in nullification of any arbitration award. The issue therefore is whether the dispute between Plaintiffs and Defendant involved a policy or procedure interpretation that should have been submitted to the FCIC.

Defendant originally determined Plaintiffs' claim was not payable because "the cause of the fire was not due to a natural cause or natural disaster." The issue presented to the arbitrator, as stated by Defendant, was whether Plaintiffs were "entitled to indemnity under their policy for crop insurance when the crop insurance act and applicable final agency determinations provide that the insured is not entitled to indemnity unless the insured can establish that the cause of ignition occurred naturally, notwithstanding policy language that seems to indicate the policy covers loss due to fire." Defendant declared that there were no factual disputes, rather the dispute was "over the application of not only policy, but federal law and regulations that govern the Federal Crop Insurance Program as well as regulatory agency interpretations by the [RMA] that are binding." Plaintiffs objected to how the policy provision was being applied, and contended that they were entitled to indemnity for loss caused by the fire. They also argued that the fire was natural because it was part of the "natural" fire-curing process.

The Court finds that the dispute between Plaintiffs and Defendant involves a policy interpretation. Specifically, whether loss caused by a fire, ignited purposefully but transformed out of control due to high winds, is loss due to a natural cause or natural disaster. Defendant argues that because the arbitrator and the parties were bound by RMA's previous determination that an insured must establish that the ignition source of the fire is due to a natural cause or natural disaster in order to recover on a claim, no additional interpretation was needed to resolve this dispute. RMA, however, has not addressed the unique situation presented by fire-cured tobacco. The FADs were based on the principle that the losses of the insured must be due to some natural disaster. Although the fire was not ignited by a natural cause, it arguably would not have escalated into an uncontrolled blaze without the natural factors of passing hurricane remnants. RMA must interpret this policy in order to resolve the instant dispute. Because neither party obtained this interpretation, the arbitration clause mandates the nullification of the award.

Otherwise, the award would not be nullified based on Plaintiffs' argument that the arbitrator failed to provide a written statement. The arbitrator described the issue in dispute, made factual findings, and determined the award. He also described the sources he referenced and the basis for his decision. In short, Plaintiffs have not shown that the written report fails to satisfy the requirements of the arbitration clause.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment (DN 15) is GRANTED and Defendant NAU Country Insurance Company's Motion (DN 14) is DENIED. The May 5, 2009, award is nullified because the parties did not obtain an interpretation from FCIC regarding how the fire provision of the insurance policy applies to Plaintiffs' insurance claim.

6